UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JERED ROD IRON SHELL,<br><br>                    Petitioner,<br><br>    vs.<br><br>WARDEN, MIKE DURFEE STATE PRISON; THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA; BRENT FLUKE,<br><br>                    Respondents. | 5:21-CV-05050-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is pending before the court on the *pro se* petition under 28 U.S.C. § 2254 of Jered Rod Iron Shell, a person incarcerated pursuant to a judgment of a South Dakota state court. See Docket No. 1. After screening Mr. Iron Shell's petition, the court issued an order to show cause directing the parties to address whether Mr. Iron Shell's petition should be dismissed as untimely. Docket No. 12. Pending is respondents' motion for judgment on the pleadings seeking dismissal of Mr. Iron Shell's petition without holding an evidentiary hearing. See Docket No. 15. Mr. Iron Shell never responded to the motion, and the time for doing so has passed. This matter has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, United States District Court Judge.

## FACTS

Mr. Iron Shell's § 2254 petition arises out of two state cases: <u>South Dakota v. Iron Shell</u>, CR 17-5987 (2017 case), and <u>South Dakota v. Iron Shell</u>, CR 18-2664 (2018 case). Both prosecutions were brought in South Dakota State Circuit Court for the Seventh Judicial Circuit, Pennington County. Both prosecutions were for failing to register as a sex offender.[1]

Mr. Iron Shell pled guilty to all charges in both cases. He was sentenced to two years' incarceration in the 2017 case, which was suspended on the condition Mr. Iron Shell successfully complete two years on probation. Docket No. 16-3. In the 2018 case, he was sentenced to five years' incarceration, which was suspended on the condition Mr. Iron Shell successfully complete three years on probation. Docket No. 16-5. Both sentences were to run concurrently. <u>See</u> Docket No. 16-4 at p. 3. Judgment was entered in the 2017 case on March 27, 2018. Docket No. 16-3 at p. 5. Amended judgment in the 2018 case was entered on August 2, 2018. Docket No. 16-5.

On January 16, 2019, the state filed petitions in both cases seeking to revoke Mr. Iron Shell's probation for various violations. Docket Nos. 16-10 and 16-11. After Mr. Iron Shell admitted the violations, the court revoked his suspended sentences in both cases, imposing the penitentiary sentences

---

[1] It appears the requirement that Mr. Iron Shell register as a sex offender may stem from <u>United States v. Iron Shell</u>, 3:04-CR-30117-CBK (D.S.D.), a federal prosecution and conviction for abusive sexual contact, to which Mr. Iron Shell pled guilty.

originally rendered.  Docket Nos. 16-12 and 16-13.  This occurred March 5, 2019.  Id.

While imprisoned, Mr. Iron Shell was considered for parole several times.  One condition of parole for all sex offenders in South Dakota is to successfully complete a "history polygraph."  Mr. Iron Shell failed to successfully complete the polygraph multiple times and was denied parole on October 20, 2020, and again on February 9, 2021.  Docket No. 16-14 at p. 4.  Mr. Iron Shell never appealed the denial of his parole to the South Dakota Board of Pardons and Paroles ("Board") under SDCL ch. 1-26.  Nor did he ever file a direct appeal to the state circuit court under that chapter.

Instead, on March 31, 2021, Mr. Iron Shell filed a state habeas petition in state circuit court, claiming the Board violated his rights under the Due Process, Equal Protection, and Ex Post Facto Clauses for denying him parole based on the failed polygraph tests.  Docket No. 16-15.  He enumerated several instances of failed polygraph tests, the latest of which was January 11, 2021.  Id. at p. 5.

The state habeas court denied relief based on SDCL § 21-27-1.1, which provides that habeas relief is unavailable for administrative actions or decisions arising out of the penal institution where an inmate is confined.  Docket No. 16-17.  The state habeas court denied a certificate of probable cause.  Id.  That decision was rendered April 21, 2021.  Id.  Mr. Iron Shell sought a certificate of probable cause from the South Dakota Supreme Court, which denied relief on July 8, 2021.  Docket No. 16-19.

Mr. Iron Shell filed his federal habeas petition under § 2254 on August 10, 2021.[2]  Docket No. 1.  He alleges the state's incarceration of him violates his rights under the Due Process, Equal Protection, and Ex Post Facto clauses.  Id.  Respondents now move for judgment on the pleadings on the grounds that Mr. Iron Shell's federal petition is untimely and procedurally defaulted.  Docket No. 15.  As indicated above, Mr. Iron Shell did not respond.

## DISCUSSION

**A.    Scope of a § 2254 Petition**

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) constrains federal courts to exercise only a "limited and deferential review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005) (quotation omitted).  A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it

---

[2] Section 2254 petitions are deemed filed when they are placed in the prison mailing system.  See Nichols v. Bowersox, 172 F.3d 1068, 1077 (8th Cir.1999) (en banc) ("[A] pro se prisoner's petition for a writ of habeas corpus is filed on the date it is delivered to prison authorities for mailing to the clerk of the court."), overruled on other grounds by Riddle v. Kemna, 523 F.3d 850 (8th Cir. 2008).

"confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[A] federal habeas court may not issue the writ simply because [it] concludes . . . the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The state court's factual findings "are presumed to be correct," and a "federal habeas court may not disregard the presumption unless" specific statutory exceptions are met. Thatsaphone v. Weber, 137 F.3d 1041, 1046 (8th Cir. 1998) (citations and quotation omitted); 28 U.S.C. § 2254(e). A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations. Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983) (cleaned up).

**B.     Statute of Limitations**

Petitions for habeas relief in federal court collaterally attacking state court convictions are governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). AEDPA contains a one-year statute of limitations. Specifically, 28 U.S.C. § 2244(d) provides in relevant part:

> **(d)** **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> **(2)** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See 28 U.S.C. § 2244(d)(1) and (2).

A judgment or state conviction is final, for purposes of commencing the statute of limitation period, at "either (i) the conclusion of all direct criminal appeals in the state system, followed by either the completion or denial of certiorari proceedings before the United States Supreme Court; or (ii) if certiorari was not sought, then by the conclusion of all direct criminal appeals in the state system followed by the expiration of the time allotted for filing a petition for the writ." Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time allotted for filing a petition for writ of certiorari with the Supreme Court is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001).

The limitations period for § 2254 petitions is subject to statutory tolling. See 28 U.S.C. § 2244(d)(2). This one-year statute of limitation period is tolled, or does not include, the time during which a properly filed application for state post-conviction relief or other collateral review is pending in state court. Faulks v. Weber, 459 F.3d 871, 873 (8th Cir. 2006); 28 U.S.C. § 2244(d)(2). The phrase "post-conviction or other collateral review" in § 2254's tolling provision encompasses the "diverse terminology that different States employ to represent the different forms of collateral review that are available after a conviction." Duncan v. Walker, 533 U.S. 167, 177 (2001). Thus, § 2254's tolling provision "applies to all types of state collateral review available after a conviction." Id.

State collateral or post-conviction proceedings "are 'pending' for the period between the trial court's denial of the [post-conviction relief] and the timely filing of an appeal from it." Maghee v. Ault, 410 F.3d 473, 475 (8th Cir. 2005) (citing Peterson v. Gammon, 200 F.3d 1202, 1203 (8th Cir. 2000)); see also Johnson v. Kemna, 451 F.3d 938, 939 (8th Cir. 2006) (an application for state post-conviction review is pending until a mandate is issued).

However, state proceedings are not pending for the ninety-day period "following the final denial of state post-conviction relief, the period during which an unsuccessful state court petitioner may seek a writ of certiorari from the United States Supreme Court." Jihad, 267 F.3d at 805. Additionally, "[s]tate proceedings are not pending during the time between the end of direct review and the date an application for state [post-conviction relief] is filed."

7

Maghee, 410 F.3d at 475 (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)). In short, the one-year statute of limitations begins to run after the state conviction is final, is tolled while state habeas proceedings are pending, and then begins running again when state habeas proceedings become final. Curtiss v. Mount Pleasant Corr. Facility, 338 F.3d 851, 853 (8th Cir. 2003).

The court notes the one-year AEDPA statute of limitations is not a jurisdictional bar. Baker v. Norris, 321 F.3d 769, 771 (8th Cir. 2003) (citation omitted). The time limit is subject to equitable tolling "when 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." Id. (quoting Paige v. United States, 171 F.3d 559, 561 (8th Cir. 1999)). A petitioner seeking equitable tolling must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The decision whether to equitably toll AEDPA's limitations period is a fact-intensive inquiry based on the totality of the circumstances. Holland, 560 U.S. at 649-50. Equitable tolling represents "an exceedingly narrow window of relief." Shoemate v. Norris, 390 F.3d 595, 597 (8th Cir. 2004) (quoting Jihad, 267 F.3d at 805).

Only one of Mr. Iron Shell's claims collaterally attacks his original judgments of conviction. He claims that he has paid his debt to society by serving his prison sentence for his underlying sex offense conviction and that prosecuting him subsequently for failing to register as a sex offender violates the Ex Post Facto clause. See Docket No. 1 at p. 8.

This claim is tied directly to the judgments of conviction entered against him on August 2, 2018, (Docket No. 16-5—2018 case), and March 27, 2018 (Docket No. 16-3—2017 case). Mr. Iron Shell did not appeal either of these convictions, so the judgments became final 30 days later, or September 2, 2018, at the latest. SDCL § 23A-32-15. He was required to file his federal habeas petition under § 2254 on this claim no later than September 2, 2019. He filed his federal habeas petition on August 10, 2021. Therefore, his Ex Post Facto claim is untimely by two years.

Although equitable tolling is theoretically available, Mr. Iron Shell bears the burden of demonstrating he is entitled to such tolling. Holland, 560 U.S. at 649. By not responding at all to respondents' motion for judgment on the pleadings, he fails to carry his burden to demonstrate grounds for equitable tolling. Accordingly, the court recommends Mr. Iron Shell's Ex Post Facto claim (ground IV of his petition) be dismissed with prejudice as untimely.

**C.      Procedural Default**

Before a state prisoner can pursue federal habeas relief, he must first exhaust his claims in state court by presenting those claims in the proper forum and pursuing all avenues of appeal first. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). All of Mr. Iron Shell's other habeas claims stem from the Board's decision to deny him parole because he failed multiple polygraph tests. The last of these tests was administered on January 11, 2021, so those claims are not untimely—Mr. Iron Shell filed his federal petition within a year of

January 2021, which is within the limitations period. But those claims are procedurally defaulted.

When a state prisoner fails to exhaust a claim according to state law, he fails to exhaust. Coleman v. Thompson, 501 U.S. 722, 731-32, 735 n.1 (1991). If there are still avenues available to him to return to state court and complete the exhaustion process properly, the federal court will enter an order requiring the prisoner to return to state court and complete the exhaustion process. Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998).

However, when it is no longer possible for the state prisoner to return to state court and exhaust, his claim is procedurally defaulted. Coleman, 501 U.S. at 731-32, 735 n.1. When a procedurally defaulted claim is presented in federal court, the federal court may not entertain that claim unless the prisoner shows cause and prejudice in support of his claim, or if the prisoner claims to be actually innocent. Id. at 750. By failing to respond to respondents' motion, Mr. Iron Shell fails to carry his burden to show cause and prejudice or to demonstrate actual innocence.

The reason Mr. Iron Shell's Due Process and Equal Protection claims are procedurally defaulted is that he failed to challenge the Board's decision through the proper avenues as established by South Dakota state law, and those avenues are now foreclosed to him. When a South Dakota inmate is aggrieved by a decision of the Board, "appeal from the Board['s decision] is governed by SDCL 1-26-37." Santema v. S.D. Bd. of Pardons and Paroles, 735

10

N.W.2d 904, 905 (S.D. 2007) (quoting Austad v. S.D. Bd. of Pardons and Paroles, 719 N.W.2d 760, 764 (S.D. 2006).

In Santema, the South Dakota inmate challenged the Board's calculation of his parole eligibility date. Id. In Austad, the inmate challenged the Board's revocation of his parole. Austad, 719 N.W.2d at 762. In both cases, the South Dakota Supreme Court unequivocally instructed that appeals from the decisions of the Board of Pardons and Paroles are governed by SDCL § 1-26-37. Santema, 735 N.W.2d at 905; Austad, 719 N.W.2d at 764. See also Acevedo v. S.D. Bd. of Pardons and Paroles, 768 N.W.2d 155, 158 (S.D. 2009) (same).

In Bohlmann v. Lindquist, 562 N.W.2d 578 (S.D. 1997), a patient brought a habeas petition in circuit court seeking a transfer to a less restrictive facility. Id. at 578. The circuit court dismissed the petition however, because Mr. Bohlmann had not obtained the necessary certification for *release*. Id. at 580. The South Dakota Supreme Court explained the circuit court reached the right result in dismissing Mr. Bohlmann's habeas petition, though it did so for the wrong reason. Id.

The court began by explaining the Human Services Center was "an administrative agency within the Department of Human Services, an executive department" under SDCL § 1-36A-1.3. Id. "[O]nce an offender is within the jurisdiction of the executive branch of government, the judicial branch—the circuit court—loses jurisdiction and control. . . . The judiciary's relinquishment of jurisdiction to the executive branch upon commitment of a defendant to an executive agency avoids the chaos and confusion that would

11

result from simultaneous jurisdiction." Id. at 581 (quotation and citations omitted). The court further explained Mr. Bohlmann must first follow the appropriate administrative procedures to seek a less restrictive setting.

> [I]n the event [he] is denied relief, he is entitled to judicial review of the denial. SDCL 1-26-30.
>
> Bohlmann, however, has not made an administrative request to be transferred. Rather than requesting the HSC evaluate his placement, he filed an application for a writ of habeas corpus with the court. This application is premature due to Bohlmann's failure to pursue appropriate administrative remedies to obtain the requested transfer and precludes judicial jurisdiction to review the request. We are without jurisdiction to entertain Bohlmann's appeal at this time. The dismissal of Bohlmann's application for a writ of habeas corpus is affirmed.

Id.

Though Mr. Bohlmann was not a prisoner, this language is significant because persons on parole or suspended sentence are also "under the supervision of the executive branch of the government." Krukow v. S.D. Bd. of Pardons and Paroles, 716 N.W.2d 121, 125 (S.D. 2006) (citations omitted). As such, pursuant to Bohlmann, a state habeas corpus petition is "premature" until the prisoner has complied with Chapter 1-26.

Mr. Iron Shell's claims are not exhausted because he did not invoke one complete round of the State's established appellate review process by following the procedures in SDCL ch. 1-26. O'Sullivan, 526 U.S. at 845 ("State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

Pursuant to Santema, the "established appellate review process" for decisions of the South Dakota Board of Pardons and Paroles is dictated by SDCL § 1-26.  735 N.W.2d at 905.  SDCL § 1-26-31 provides:

> **1-26-31**.   Notice of appeal—Time for service and filing.  An appeal shall be taken by serving a copy of a notice of appeal upon the adverse party, upon the agency, and upon the hearing examiner, if any, who rendered the decision, and by filing the original with proof of such service in the office of the clerk of courts of the county in which the venue of the appeal is set, within thirty days after the agency served notice of the final decision or, if a rehearing is authorized by law and is requested, within thirty days after notice has been served of the decision thereon.  Failure to serve notice of the appeal upon the hearing examiner does not constitute a jurisdictional bar to the appeal.

See SDCL § 1-26-31.  The South Dakota Supreme Court has held that this requirement is jurisdictional, requiring dismissal of the appeal if it is not properly and timely filed and served.  Hansen v. S.D. Bd. of Pardons and Paroles, 601 N.W.2d 617, 619 (S.D. 1999).  Thus, the circuit court (and consequently the South Dakota Supreme Court) was deprived of the opportunity to review the merits of Mr. Iron Shell's constitutional claims because he did not follow the appeal procedure set forth in SDCL ch. 1-26.  Thus, he failed to exhaust his constitutional claims in state court.

This court cannot dismiss Mr. Iron Shell's petition without prejudice to allow him to exhaust his state remedies (see Carmichael, 163 F.3d at 1045), because there are no nonfutile avenues of relief available to Mr. Iron Shell to properly exhaust in state court (see Hansen, 601 N.W.2d at 619).  A federal habeas petitioner who has defaulted his federal claims in state court by failing

13

to meet the state's procedural rules for presenting those claims has committed "procedural default."  Coleman, 501 U.S. at 731-32, 735 n.1.

As stated above, in the face of a procedural default, a federal court may not reach the merits of a state prisoner's claims unless the prisoner shows cause and prejudice or actual innocence.  Id. at 750.  Mr. Iron Shell fails to carry his burden to demonstrate either ground for excusing procedural default.  Accordingly, the court recommends dismissing Mr. Iron Shell's remaining claims in his federal petition with prejudice based on procedural default.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting respondent's motion for judgment on the pleadings [Docket No. 15] and dismissing Mr. Iron Shell's federal habeas petition with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific to require de novo review by the district

court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

    DATED this 27th day of July, 2022.

                              BY THE COURT:

                              VERONICA L. DUFFY
                              United States Magistrate Judge