UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JERED ROD IRON SHELL,<br><br>                    Petitioner,<br><br>    vs.<br><br>WARDEN, MIKE DURFEE STATE PRISON, THE ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, and BRENT FLUKE,<br><br>                    Respondents. | 5:21-CV-05050-KES<br><br>ORDER GRANTING IN PART AND DENYING IN PART RESPONDENTS' MOTION FOR JUDGMENT ON THE PLEADINGS |

Petitioner, Jared Iron Shell, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Docket 1. The court referred this matter to Magistrate Judge Duffy. Docket 11. Magistrate Judge Duffy ordered the parties to show cause why Iron Shell's claims should not be dismissed as untimely. Docket 12 at 6. Respondents, Warden, Mike Durfee State Prison, the Attorney General of the State of South Dakota, and Brent Fluke, moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Docket 15. Magistrate Judge Duffy issued a Report and Recommendation, recommending the court grant respondents' motion for judgment on the pleadings and dismiss Iron Shell's petition in part for being untimely and in part because he has procedurally defaulted his claims. *See* Docket 19 at 9, 13-14. Iron Shell objects to this Recommendation. Docket 21.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

In determining the facts, the court takes judicial notice of Iron Shell's criminal cases and state habeas filings. The court also considers the material Iron Shell and respondents submitted relating to Iron Shell's parole paperwork because they are either necessarily embraced in his petition or do not contradict his petition. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). Additionally, the court takes judicial notice of information contained on the South Dakota Department of Correction's official website. *See* Fed. R. of Evid. 201 (empowering court to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Malkin v. Fed. Ins. Co.*, 562 F.Supp.3d 854, 861 (C.D. Cal. 2022) (taking judicial notice of documents found on California agency websites when deciding Fed. R. of Civ. Proc. Rule 12(c) motion); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F.Supp.3d 156, 166

(S.D.N.Y. 2015) (taking judicial notice of documents retrieved from official governmental websites and considering them in a Rule 12(c) motion). The court accepts plaintiff's factual allegations as true and construes all reasonable inferences in favor of the non-moving party. *See Saterdalen v. Spencer*, 725 F.3d 838, 840-41 (8th Cir. 2013).

In March 2018, Iron Shell pleaded guilty in South Dakota state court, case 17-5987,[1] to failing to update his employment and address, as required due to his sex offender status. *See* Docket 16-3 at 1-3. The state court sentenced him to a suspended two-year prison sentence on both counts, to run concurrently, and to a two-year probationary period. *See id.* at 2-4.

On May 29, 2018, South Dakota filed a petition to revoke Iron Shell's probation in his 17-5987 case, and after he admitted to the alleged violations in the petition to revoke, the South Dakota state court amended his previous judgment and ordered him to continue his probation for two years starting on July 27, 2018, the date of the court's amended judgment. *See* Docket 16-9 at 2-3. That same day, July 27, 2018, in case 18-2664,[2] Iron Shell pleaded guilty to failing to update his address, and the South Dakota state court sentenced him to a suspended five-year sentence, with a three-year probationary period to

---

[1] The criminal complaint and judgment in his 17-5987 case also list 17-216662 as a case number. *See* Docket 16-1; Docket 16-3. For purposes of this opinion, the court uses the 17-5987 number.

[2] Similar to the 17-5987 case, although the complaint and judgment in his 18-2664 case lists 18-206541 as a case number, the court uses 18-2664. *See* Docket 16-2; Docket 16-4.

run concurrently with his two-year probationary sentence in his 17-5987 case. *See* Docket 16-4 at 1-3. The South Dakota state court ordered Iron Shell to serve 180 days in Pennington County Jail, with 66 days credit and the last 90 days being suspended. *See* Docket 16-5 at 2.

In January 2019, South Dakota filed a petition to revoke both of the probation sentences in cases 17-5987 and 18-2664. *See* Docket 16-10 at 1-4; Docket 16-11 at 1-4. In March 2019, Iron Shell admitted to the petitions' allegations. *See* Dockets 16-12, 16-13. In his 17-5987 case, the South Dakota state court revoked his suspended sentences and ordered him to serve two years in custody for both counts to run concurrently. *See* Docket 16-12 at 1-3. In his 18-2664 case, the court revoked Iron Shell's suspended sentence and sentenced him to a five-year term with the last three years suspended, to run concurrent with his 17-5987 sentence. *See id.* at 2; Docket 16-13 at 1-4.

The South Dakota Board of Pardons and Paroles (Board) issued an initial parole date of July 4, 2019, to Iron Shell. *See Offender Locator*, South Dakota Department of Corrections, https://doc.sd.gov/adult/lookup/ (last visited February 9, 2023). The Board held a dispositional meeting on May 5, 2020, and ultimately denied his parole. Docket 16-14 at 4 (providing for next review date to be in October 2020). The Board later denied parole to Iron Shell on October 10, 2020, but then granted him parole on January 11, 2021, on the condition that he would successfully complete a polygraph test. *Id.* The Board denied Iron Shell parole on February 9, 2021, due to Iron Shell failing the polygraph test on January 11, 2021. *See id.;* Docket 1-1 at 1-3.

Iron Shell did not file a notice of appeal with the South Dakota Circuit Court. Instead, on March 31, 2021, Iron Shell filed a state habeas petition in which he argued the Board's denial of parole based on his three failed polygraph tests violated his Due Process, Fifth Amendment, Eighth Amendment, Equal Protection, and Ex Post Facto rights. *See* Docket 16-15 at 6, 8, 10-11. The South Dakota Circuit Court dismissed this state habeas petition for lack of jurisdiction. *See* Docket 16-17. Iron Shell moved for a certificate of probable cause to appeal the decision to the South Dakota Supreme Court, but the South Dakota Supreme Court denied his motion. *See* Docket 16-17; Docket 16-18.

In August 2021, Iron Shell filed this instant § 2254 petition. *See* Docket 1. He challenges both his underlying convictions and his parole denials. *Id.* Attacking his convictions, he alleges that the State has violated his rights under the Ex Post Facto Clause, the Double Jeopardy Clause, and the Due Process Clause because he was required to serve time for failing to register, a "non-violent crime," despite him already serving his time in federal prison for his underlying sexual offense. *See* Docket 1-1 at 6-7, 15-17. With respect to his parole denials, he alleges various Constitutional violations, including his Fifth Amendment Right against self-incrimination. *See id.* at 4, 19-27. He argues the State violated his Fifth Amendment Right against self-incrimination because it refuses to release him on parole because of his three failed polygraph tests, the latest failure being January 11, 2021, even though his underlying offenses were non-violent. *See id.* Additionally, he argues that his parole denial violates

5

his rights under the Equal Protection Clause because inmates convicted of forgery, driving under the influence, and possessing a controlled substance qualify for early release from parole, unlike him due to his sex offender status. *See id.* at 8.

## DISCUSSION

### I.   Statute of Limitations

The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a one-year statute of limitations to petitions filed under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d)(1); *Martin v. Fayram*, 849 F.3d 691, 695-96 (8th Cir. 2017). As relevant here, the one-year limit starts to run the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[,]" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (D); *see Cook v. New York State Div. of Parole*, 321 F.3d 274, 280-81 (2d. Cir. 2003) (holding that date of administrative decision to revoke parole triggered the one-year statute of limitation under the AEDPA). Although the Eighth Circuit has not decided whether the AEDPA's statute of limitations applies to individual claims rather than an application as a whole, every court of appeals to consider the question has held the limitation applies on a claim-by-claim basis. *See Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014) (per curiam) (collecting cases). Thus, the court must separate Iron Shell's claims attacking his conviction from his claims attacking his parole denials.

6

### A.   Underlying Conviction

Iron Shell argues that prosecuting him for failing to register as a sex offender violates the Ex Post Facto and Double Jeopardy Clauses because he has already paid his debt to society by serving time for his underlying sex offense. *See* Docket 1 at 8; Docket 1-1 at 6-7. This claim attacks his final judgment on his failure to register convictions. For state petitioners who do not seek review with the United States Supreme Court, judgment becomes final at the "expiration of the time for seeking [direct] review" in state court. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). Because Iron Shell did not seek review with the South Dakota Supreme Court, the time for him to appeal from his judgment of convictions was thirty days "after the judgment is signed, attested, and filed." *See* SDCL 23A-32-15. Here, the state court signed, attested, and filed both of Iron Shell's 17-5987[3] and 18-2664 judgements of conviction on August 2, 2018, and thus the judgments became final on September 1, 2018.[4]

---

[3] The Report and Recommendation cited March 27, 2018, as the date of Iron Shell's judgment of conviction for his 2017 case, but the South Dakota trial court issued an amended second judgment in this case which was ultimately filed on August 2, 2018. *See* Docket 19 at 9; Docket 16-9. An amended judgment is a new judgment, which triggers a new statute of limitations. *See Smith v. Williams*, 871 F.3d 684, 688 (9th Cir. 2017) ("[T]he state trial court entered an amended judgment. This was a new judgment, starting a new one-year statute of limitations."); *see also Magwood v. Patterson*, 561 U.S. 320, 341-42 (2010) (holding new amended judgment renders a second in time petition not to be second or successive so long as it is the first challenging the new judgment). Thus, the court finds that Iron Shell's convictions on both cases became final on September 1, 2018.

[4] The Report and Recommendation concluded that the judgments became final on September 2, 2018, at the latest. Docket 19 at 9. But 30 days from August 2, 2018, results on September 1, 2018, and thus the court finds his convictions became final on September 1, 2018.

*See id.*; Docket 16-5 at 1, 4; Docket 16-8 at 1, 3. As a result, Iron Shell had until September 1, 2019, to file a federal habeas petition challenging his underlying convictions. *See* 28 U.S.C. § 2244(d)(1)(A).

Iron Shell filed his state habeas petition on March 31, 2021. *See* Docket 16-15 at 2. Although the AEDPA statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[,]" 28 U.S.C. § 2244(d)(2), "the time between the date that direct review of a conviction is completed and the date that an application for state post-conviction relief is filed counts against the one-year period." *Painter v.* Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001). Thus, because his state convictions became final on September 1, 2018, and because well over two years had passed until he filed his state habeas petition on March 31, 2021, his instant federal petition with regard to the failure to register convictions filed in August of 2021 is late. *See* 28 U.S.C. § 2244(d)(1)(A).

The court finds equitable tolling does not apply in this case because Iron Shell waited nearly two years to file any challenges to his underlying conviction. *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (noting equitable tolling is only appropriate if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing") (citation omitted)). Iron Shell objects and argues equitable tolling should apply because "he knew nothing about the code and languages of the state and federal law or [how to] file motions and petitions

8

to the state and federal judges." *See* Docket 21 at 3. But the Eighth Circuit has repeatedly rejected this argument, even for pro se prisoners. *See Shoemate v. Norris,* 390 F.3d 595, 598 (8th Cir. 2004); *Baker v. Norris*, 321 F.3d 769, 772 (8th Cir. 2003). Thus, the court adopts the Report and Recommendation's finding, as modified in this opinion, that Iron Shell's challenge to his underlying convictions is time barred.

### B.    Parole Denials

Iron Shell also challenges the Board's decision to deny him parole in May of 2020, October 20, 2020, and February 12, 2021. Docket 1-1 at 3-4. These parole denials form "the factual predicate" of his claim. *See* 28 U.S.C. § 2244(d)(1)(D); *Cook*, 321 F.3d at 280-81. But the challenge to Iron Shell's initial parole hearing, which occurred on May 5, 2020, is untimely, because he did not file this instant habeas petition until August 11, 2021.[5]

Iron Shell did file a state habeas petition on March 31, 2021, which the state circuit court denied on April 21, 2021. *See* Docket 17-17 at 1-2; Docket 1-1 at 81. Even if the time period between March 31, 2021 and April 21, 2021 is not counted because it is tolled, Iron Shell's federal habeas challenge to his

---

[5] The Report and Recommendation suggests that the relevant date to determine the statute of limitations is January 11, 2021, the date of Iron Shell's last polygraph test. *See* Docket 19 at 9-10. While Iron Shell challenges the Board's use of polygraph tests, he ultimately challenges the Board's denial of his parole based in part, on the polygraph results. *See* Docket 1-1 at 1-3. Iron Shell complains of his continued incarceration, i.e., his parole denials. *See id.* Thus, the court finds the dates of the Board's parole denials to be the relevant start-dates.

May 5, 2020, parole denial is still untimely. From May 5, 2020, the day of his

initial parole hearing, to March 31, 2021, the day he filed his state habeas

petition, 330 days had passed. Between April 21, 2021, the day the state

circuit court denied Iron Shell's state habeas petition, and August 10, 2021,

the earliest possible date to use for his instant federal petition, 111 days had

passed. Adding 330 and 111 days is well beyond the 365-day statute of

limitations, and thus his challenge to his May 5, 2020, parole denial is

untimely. But Iron Shell's challenges to his October 20, 2020, and February

12, 2021, denials are timely because he filed his petition in August 2021. The

court turns to whether Iron Shell properly exhausted his state remedies with

respect to his challenges of the Board's parole denials on October 20, 2020,

and February 12, 2021.

## II.    Exhaustion of State Remedies and Procedural Default

28 U.S.C. § 2254(b)(1) outlines the requirement that prisoners exhaust

their state remedies before filing a federal habeas petition. It provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted unless it appears that
>
>> (A) the applicant has exhausted the remedies available
>> in the courts of the State; or
>> (B) (i) there is an absence of available State corrective
>> process; or (ii) circumstances exist that render such
>> process ineffective to protect the rights of the
>> applicant.

28 U.S.C. § 2254(b)(1). "The exhaustion requirement of § 2254(b) ensures that

the state courts have the opportunity fully to consider federal-law challenges to

a state custodial judgment before the lower federal courts may entertain a

collateral attack upon that judgment." *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001). Exhausting available state court remedies gives a state the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citations omitted).

Section 2254(b)(1)(B)(i) and (ii) provides that a petitioner is not required to exhaust his claims if either "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." In other words, AEDPA provides an exception to the exhaustion requirement when there is "no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *see also Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (recognizing exhaustion requirement exceptions). "Congress took care to ensure that the exhaustion requirement—for all its practical virtue—would not leave state prisoners without a remedy." *See Carter v. Buesgen*, 10 F.4th 715, 723 (7th Cir. 2021).

The court thus turns to South Dakota's established procedures for challenging a Board's parole denials. SDCL § 1-26-30.2 allows a party to appeal to a circuit court "in a contested case from a final decision, ruling, or action of an agency." The Board is an administrative agency subject to the Administrative Procedure Act. *See, e.g.*, *Petersen v. S.D. Bd. of Pardons and Paroles*, 912 N.W.2d 841, 843-44 (S.D. 2018) (stating inmate could have appealed Board's final determination of her initial parole-eligibility date). But the issue is whether the parole denials that Iron Shell challenges constitute a

11

"contested case" as required under SDCL § 1-26-30.2. Without a contested case, a South Dakota circuit court does not have subject matter jurisdiction to hear an appeal. *See Petersen*, 912 N.W.2d at 843-44; *Bergee v. S.D. Bd. of Pardons and Paroles*, 608 N.W.2d 636, 639-41 (S.D. 2000).

A "contested case" is "a proceeding . . . in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing . . . ." SDCL § 1-26-1(2). In *Bergee*, the South Dakota Supreme Court discussed whether parole hearings counted as a "contested case" in the state's old parole scheme. *See* 608 N.W.2d at 638-39. SDCL § 24-15-8 governs parole for inmates who committed their offenses before July 1, 1996. *See Bergee*, 608 N.W.2d at 642-43. In this scheme, although inmates were entitled to a parole hearing once they became parole eligible, parole determinations were entirely discretionary. *See id.* at 640, 643; SDCL § 24-15-8 ("The board *may* issue an order to the Department of Corrections that the inmate shall be paroled . . . ."). The South Dakota Supreme Court in *Bergee* held that because parole was entirely within the Board's discretion, an inmate did not have any protected due process rights and thus parole hearings were not "contested cases subject to appeal." *See* 608 N.W.2d at 641.

Although Iron Shell committed his offenses after July 1, 1996, and thus the parole scheme in *Bergee* does not apply to him, the parole hearings under the current scheme that he challenges in his instant federal habeas petition suffer from the same fatality as those in *Bergee*. *See* Docket 17-1 at 1 (offense

dates of November 16, 2017, and November 28, 2017, for 17-5987 case);
Docket 17-2 at 1 (offense date of May 1, 2018, for 18-2664 case). Under the
current parole scheme (i.e. for inmates who committed their offenses after July
1, 1996), the Department of Corrections shall set an inmate's initial parole
date. *See* SDCL § 24-15A-32. Additionally, the Department of Corrections shall
establish an "individual program directive for each inmate" that may include
required classes, work, refraining from certain conduct evincing an intent to
reoffend, among other possible requirements. *See* SDCL § 24-15A-34.

The current parole scheme differs significantly compared to the old
scheme with respect to an inmate's *initial* parole hearing. Under the old
scheme, the Board had total discretion in all hearings, including the first, to
grant an inmate parole. *See Bergee*, 608 N.W.2d at 641, 43. In the new
scheme, the Board does not have total discretion, and instead "shall" grant
parole at the inmate's initial parole date as long as the inmate has met certain
conditions. *See* § 24-15A-38. Section 24-15A-38 provides:

> Each inmate shall be released from incarceration to parole
> supervision, without a hearing with the board, at the time of
> the inmate's initial parole date, if the inmate has substantively
> met the requirements of the individual program directive
> established by the department, agreed to the conditions of
> supervision and has an approved parole release plan.

Because of the non-discretionary nature of this initial hearing, the Board's
decision to deny parole at this initial hearing counts as a contested case and is
subject to appeal to a South Dakota circuit court. *See Bergee*, 608 N.W.2d at
639-41 (holding discretionary hearings are not contested case and thus not

13

subject to appeal in South Dakota circuit court); SDCL § 1-26-1; SDCL § 1-26-30.2. Indeed, the South Dakota Legislature expressly provides that an inmate may appeal the Board's finding of non-compliance at the initial parole hearing pursuant to SDCL Ch. 1-26, which is the chapter that provides for appeals of administrative agency decisions. *See* SDCL § 24-15A-39 ("Any inmate appeal of a finding of noncompliance by the board shall be filed pursuant to chapter 1-26[.]").

But in the event the Board finds an inmate has not substantively met the requirements of his individual program directive, the Board may "deny release at his initial parole date and set the time for a *subsequent discretionary* parole hearing." *See id.* (emphasis added). An inmate who is denied release at his initial parole date is entitled to have a subsequent discretionary hearing at least every two years. *See id.* Section 24-15A-41 confirms that an inmate who has been denied parole at his first parole date may be subsequently paroled "based on the discretion of the board after a hearing." This discretion is based on the Board's consideration of the following factors: "(1) The inmate's compliance with work, school, and program directives; (2) The inmate's compliance with the rules and policies of the department; (3) Conduct by the inmate evincing an intent to reoffend[.]" SDCL § 24-15A-42.[6]

---

[6] SDCL § 24-15A-42 contains a fourth factor, "[m]itigating factors impacting the warden's determination of substantive noncompliance[,]" but it also provides that this fourth factor is not to be considered in a subsequent discretionary hearing.

Here, although Iron Shell challenges the Board's denial of parole at his *initial* parole hearing, which occurred in May 2020, his challenge to this initial parole hearing is untimely and thus barred as discussed above. *See* Docket 16-14 at 4. The court limits its analysis to the Board's denial of Iron Shell's parole on October 20, 2020, and February 9, 2021. Under South Dakota law, after the Board denied Iron Shell parole at his initial hearing, the Board then had complete discretion on whether to grant him parole. *See* SDCL § 24-15A-41. Thus, under the South Dakota Supreme Court's holding in *Bergee*, Iron Shell could not have appealed the Board's denial of parole in October 20, 2020, and February 9, 2021, because those parole hearings are not "contested cases" subject to appeal. *See Bergee*, 608 N.W.2d at 639; SDCL § 1-26-1(2); SDCL § 1-26-30.2.

The Report and Recommendation cites several cases for the proposition that the South Dakota Supreme Court "unequivocally instructed that appeals from the decisions of the Board of Pardons and Paroles are governed by SDCL § 1-26-37[,]" and thus "Iron Shell's claims are not exhausted because he did not invoke one complete round of the State's established appellate review process by following the procedures in SDCL ch. 1-26." Docket 19 at 11-12. But the court disagrees with the Report and Recommendation's discussion for several reasons. First, SDCL § 1-26-37 deals with an inmate's appeal of a final judgment of a *circuit court* to the South Dakota Supreme Court. *See* SDCL § 1-26-37 ("An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme

Court."). Thus, this statute applies only if a circuit court could hear an appeal of an administrative decision in the first place. And here, as described above, *Burgee* forecloses Iron Shell's ability to appeal his October 20, 2020, and February 9, 2021, parole denials. *See* 608 N.W.2d at 640-41.

Second, none of the cases the Report and Recommendation cites deal with a discretionary parole hearing that falls under *Bergee*. In *Santema v. S.D. Bd. of Pardons and Paroles*, 735 N.W.2d 904, 904-05 (S.D. 2007), an inmate challenged the Board's calculation of his parole eligibility date. But the Board has no discretion in making this calculation, and thus inmates are entitled to challenge the Board's calculations on these dates. *See* SDCL § 24-15A-32 (2019) ("This date *shall be calculated by* applying the percentage indicated in the following grid to the full term minus any suspended time of the inmate's sentence . . . ." (emphasis added)). In *Austad v. S.D. Bd. of Pardons and Paroles*, 719 N.W.2d 760, 762, 769 (S.D. 2006), the South Dakota Supreme Court rejected an inmate's challenge to the Board's decision to revoke a suspended sentence, finding that the Board was "reasonably satisfied" that the inmate had failed to comply with the terms of his supervision agreement. Although the Court acknowledged the Board maintained some discretion in revoking an inmate's suspended sentence, the Court still found that unlike in the subsequent parole hearings after an initial parole hearing, the Board's discretion in deciding to revoke an individual's suspended sentence was limited. *See id.* at 769 ("As we established above, the Board maintains discretion to revoke an inmate's suspended sentence *if the inmate commits*

16

*offenses that demonstrate he is unworthy of the suspension.*" (emphasis added)). Similarly in *Acevedo v. S.D. Bd. of Pardons and Paroles*, 768 N.W.2d 155, 160 (S.D. 2009), the Court concluded that for the Board to revoke parole, the Board needs to be "reasonably satisfied" that the parolee has violated a parole condition. Thus, unlike the decision to grant parole after the Board has denied parole in an initial parole hearing, revocation of parole is not completely discretionary and still subject to administrative review. *See id.*

In short, the appeal process under SDCL § 1-26 that the Report and Recommendation found Iron Shell failed to exhaust is unavailable to Iron Shell, because Iron Shell is challenging the Board's parole denials that occurred after his initial parole hearing. The Board retains complete discretion in these subsequent parole hearings, and thus the Board's subsequent parole denials are not contested cases subject to appeal. *See Bergee*, 608 N.W.2d at 640-41; SDCL § 1-26-1(2); SDCL § 1-26-30.2. As a result, the court rejects the Recommendation that Iron Shell failed to follow South Dakota's appeal process to the circuit court.

Because the established appeal procedure under South Dakota law was unavailable to Iron Shell,[7] the court finds that he is excused from the

---

[7] South Dakota law provides a writ of habeas corpus under SDCL § 21-27-1, but specifically excludes the availability of the writ to instances in which an incarcerated or detained individual under a lawful order "seek[s] relief from . . . administrative decisions made with regard to such application arising out of disciplinary or administrative actions of the penal institution where the applicant is being confined." SDCL § 21-27-1.1. Iron Shell attempted to file a state writ of habeas corpus under SDCL § 21-27-1, but the South Dakota circuit court dismissed the petition for lack of subject matter jurisdiction,

exhaustion requirement because there is "an absence of available State corrective process[.]" 28 U.S.C. § 2254(b)(1)(B)(i); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("[N]othing in our decision today requires the exhaustion of any specific remedy when a State has provided that that remedy is unavailable."); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies *available in the courts of the State*[.]") (emphasis added).

South Dakota law provides two other extraordinary remedies to prisoners in Iron Shell's shoes: the writ of mandamus and prohibition. *See Tibbetts v. State*, 336 N.W.2d 658, 661-62 (S.D. 1983). The Eighth Circuit has explained that courts should excuse exhaustion if "state remedies are inadequate or fail to 'afford a full and fair adjudication of the federal contentions raised.' " *Victor v. Hopkins*, 90 F.3d 276, 279-80 (8th Cir. 1996). The Seventh Circuit has found that if the state remedy is "found in only exceptional cases and is unavailable to virtually all petitioners[,]" the exhaustion exception applies. *See Jones v. Washington*, 15 F.3d 671, 674 (7th Cir. 1994) (*overruled on other grounds by Hogan v. McBride*, 74 F.3d 144, 147 (7th Cir. 1996)). Similarly, the Ninth Circuit has indicated that the word "available" as used in § 2254(b) "does not

---

finding that SDCL § 21-27-1.1 barred his petition. *See* Docket 17-17. The court need not decide whether SDCL § 21-27-1.1 does in fact preclude inmates from challenging parole denials in the form of a writ of habeas corpus, because it finds that Iron Shell's attempt, and the Circuit Court's rejection, of this avenue of relief satisfies the exhaustion requirement of 28 U.S.C. § 2254(b). Specifically, the court assumes, but does not decide, the Circuit Court's view of § 21-27-1.1 in finding "an absence of available State corrective process[.]" 28 U.S.C. § 2254(b)(1)(B)(i).

refer to an avenue that exists on a map but is closed permanently to the kind of vehicle being driven by the defendant . . . [and] does not include a door that has been forever sealed." *Russell v. Rolfs*, 893 F.2d 1033, 1037-38 (9th Cir. 1990). In light of these cases, the court now turns to the availability of South Dakota's writ of prohibition and mandamus.

Under South Dakota law, "[a] writ of prohibition is an extraordinary remedy." *Doe v. Nelson*, 680 N.W.2d 302, 305 (S.D. 2004) (quoting *South Dakota Bd. of Regents v. Heege*, 428 N.W.2d 535, 537 (S.D. 1988)). "It may only issue upon a showing that a public officer is acting or is about to act without or in excess of the officer's jurisdiction or authority conferred by law." *Id.* (citing SDCL § 21–30–1). Although distinct, a writ of mandamus is similarly an "extraordinary remedy that will issue only when the duty to act is clear." *Tornow v. Sioux Falls Civ. Serv. Bd.*, 827 N.W.2d 852, 857 (S.D. 2013) (citations omitted). The writ of mandamus "may only be used to compel ministerial duties, not discretionary duties." *Krsnak v. S. Dakota Dep't. of Env't and Nat. Res.*, 824 N.W.2d 429, 434 (S.D. 2012) (citations omitted). "To prevail on a writ of mandamus or prohibition, Petitioners must show a clear right to performance of the specific duty sought to be compelled and the [respondent] must have a definite obligation to perform that duty." *Cheyenne River Sioux Tribe v. Davis*, 822 N.W.2d 62, 66 (S.D. 2012) (citations omitted).

In addition to South Dakota's description of the writ of prohibition or mandamus as being "extraordinary" remedies, the court is unaware of a single South Dakota Supreme Court decision that has issued either of these writs in

19

the context of a parole denial case, much less a parole denial in which the Board retains complete discretion. That is unsurprisingly, given that South Dakota courts may only issue either of these writs if the Board has a "definite obligation" to grant parole. *See id.* The Board's discretion in granting parole in second or later parole hearings necessarily negates a finding of the Board having a "definite legal obligation" to do so. Thus, although available theoretically, the court finds that these extraordinary remedies are not "available" under 28 U.S.C. § 2254(b)(1)(B)(i). The court finds Iron Shell is excused from the exhaustion requirement.

This conclusion aligns with the Eighth Circuit's interpretation of a neighboring provision, 28 U.S.C. § 2254(c). Under 28 U.S.C. § 2254(c), "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." "Although this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, [the Supreme Court] ha[s] never interpreted the exhaustion requirement in such a restrictive fashion." *O'Sullivan*, 526 U.S. at 844. *O'Sullivan* recognized that state prisoners "do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." *Id.*; *see also Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) ("A state prisoner is not required to pursue 'extraordinary' remedies outside of the standard review process[.]"); *Dixon v. Dormire*, 263 F.3d

20

774, 777 (8th Cir. 2001) (noting exhaustion requirement "does not require a petitioner to . . . invoke 'extraordinary remedies' outside the standard review process where relief has not been provided in the past[.]").

Here, as discussed above, South Dakota does not provide inmates such as Iron Shell with a standard review process to challenge second and subsequent parole denials. And under South Dakota law, a writ of mandamus and prohibition are both "extraordinary." *Nelson*, 680 N.W.2d at 305; *Tornow*, 827 N.W.2d at 857. Thus, as the Eighth Circuit has held, the technical availability of these "extraordinary" remedies in South Dakota does not require Iron Shell to pursue such remedies. *See Welch*, 616 F.3d at 758; *Dixon*, 263 F.3d at 777. Iron Shell is excused from the exhaustion requirement because the writs of mandamus and prohibition are not "available" to him under 28 U.S.C. § 2254(b)(1)(B)(i).

Finding Iron Shell is excused from the exhaustion requirement does not necessarily end the court's inquiry. Rather, the court must consider whether Iron Shell is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *see also Sweet v. Delo*, 125 F.3d 1144 (8th Cir. 1997) ("The State does not argue that [prisoner] has failed to exhaust his available remedies in state court, but exhaustion alone is not sufficient to entitle [prisoner] to consideration of his claims in federal court."). "A state prisoner procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Murphy v. King*, 652 F.3d 845, 849 (8th Cir. 2011).

A prisoner who initially fails to exhaust his remedies may find he is no longer able to do so under state procedural rules (e.g. statute of limitations issues), and thus has technically satisfied the exhaustion requirement because there would no longer be any state remedies "available" to him under 28 U.S.C. § 2254(b)(1)(B)(i). *See Morgan v. Javois*, 744 F.3d 535, 538 (8th Cir. 2013); *Coleman*, 501 U.S. at 732; *see also Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005). But even though the prisoner may have satisfied the exhaustion requirement, the prisoner is barred under the procedural default rule for failing to properly follow the state's procedural rules. *Murphy v. King*, 652 F.3d at 849. A prisoner who has procedurally defaulted is barred from receiving federal review unless the prisoner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

For the procedural default doctrine to apply, the prisoner must have violated a state procedural rule or, in the event the prisoner has failed to exhaust his remedies, the state court in which the prisoner would attempt to exhaust his remedies would have necessarily found a procedural default. *See Murphy*, 652 F.3d at 849; *Coleman*, 501 U.S. at 735 n.1 (explaining a claim to be procedurally defaulted "if the petitioner failed to exhaust state remedies and *the court to which the petitioner would be required to present his claims* in order to meet the exhaustion requirement would now find the claims procedurally barred." (emphasis added)). For example, in *Murphy*, the Eighth Circuit held

that the prisoner's claim was procedurally defaulted because he failed to raise all his claims in his direct appeal when state law provided that his failure to do so generally barred future courts from considering subsequent petitions for post-conviction relief. *See* 652 F.3d at 849-50. In *Weeks v. Bowersox*, the prisoner failed to properly exhaust his remedies by failing to file the necessary postconviction motion, and any future attempt at filing such a motion would be untimely under the state's procedural rules, thus putting the prisoner in procedural default. *See* 119 F.3d 1342, 1348, 1350 (8th Cir. 1997). And in *Rehbein v. Clarke*, 94 F.3d 478, 483 (8th Cir. 1996), the prisoner had failed to raise certain claims in his state-post conviction proceedings and thus was procedurally defaulted in state court.

Here, unlike the above cases, Iron Shell has no state court where he must file his claims because, as explained above, the court finds "there is an absence of available State corrective process" for Iron Shell to litigate his claims in South Dakota state courts. 28 U.S.C. § 2254(b)(1). The above cases simply illustrate that, *assuming there is a proper state remedy*, a prisoner cannot do an end-around the exhaustion requirement by failing to properly follow the state remedy procedures and then claiming "there is an absence of available State corrective process" in the event such state remedy is no longer available due to the state's procedural rules. *See Coleman*, 501 U.S. at 732. But without a state avenue of relief in the first place, Iron Shell cannot be in procedural default at the state level. The procedural default doctrine does not apply to Iron Shell. Thus, the court must evaluate the merits of Iron Shell's claims. *See, e.g.,*

23

*Piercy v. Black*, 801 F.2d 1075, 1077-78 (8th Cir. 1986) (finding prisoner properly exhausted state remedies for two claims and was excused from exhaustion for one claim and thus reaching the claims' merits).

Because the State did not address the merits of Iron Shell's claims and because the Report and Recommendation did not do so either, the court refers this matter to Magistrate Judge Duffy to issue a Report and Recommendation on Iron Shell's surviving claims—his challenges to the Board's parole denials on October 20, 2020, and February 12, 2021—on its merits.

## CONCLUSION

The court adopts in part and rejects in part Magistrate Judge Duffy's recommendation. The court adopts the Report and Recommendation's conclusion, as modified in this opinion, that Iron Shell's claims attacking his original conviction are untimely and unworthy of equitable tolling. The court also dismisses Iron Shell's challenge to the Board's May 2020 parole denial as untimely. But the court rejects the Report and Recommendation's conclusion that Iron Shell failed to properly exhaust his remedies and is procedurally defaulted for his challenges to the Board's parole denials in October 2020 and February 2021. Thus, for these surviving claims, the State's motion for judgement on the pleadings (Docket 15) is denied. It is

ORDERED that the Report and Recommendation (Docket 19) is adopted in part, as modified in this opinion, and rejected in part. The State's motion to dismiss Iron Shell's petition for judgement on the pleadings (Docket 15) is granted with respect to Iron Shell's challenges to his underlying conviction and

May 2020 parole denial but denied with respect to Iron Shell's challenges to his October 2020 and February 2021 parole denials.

It is FURTHER ORDERED that this matter is referred to Magistrate Judge Duffy to address Iron Shell's surviving claims on their merits.

DATED March 16, 2023

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE